Good morning. May it please the court, my name is Brian Dunn. I represent the petitioner here, the Ambassador Shreesh. I'm going to attempt to reserve about five minutes for rebuttal. It'll probably depend on how many questions you have on my opening end with respect to Mr. Mencken, but I understand I'll look at my time. So with respect to my client, I guess I'll start by just saying that the relief that we seek here. In the courts below, he was found ineligible for all the which are each independently bars to relief. There was a terrorism material support bar and then there was an adverse credibility finding which was initially made by the immigration judge and then affirmed but on different grounds and without citing matter of bravado by the BIA. The government has conceded in its responsive brief that the terrorism support grounds relied upon by the BIA were insufficient and that can't be corrected by this court. So they have no longer asserted that as a bar to the relief which my client seeks. What we have now is an adverse credibility finding by the BIA which rested on a number of grounds and it is a post-Real ID Act case. So we're not talking about heart of the claim. The standard here is totality of the circumstances and I think it's a fair view. The government is not treating fairly the actual statutory standard of totality of the circumstances in asserting that the adverse credibility finding is supported and supportable on the record below. They've already conceded that the first ground relied upon by the BIA that Mr. Shreesh made and then perpetrated a falsehood regarding his father was simply fully unsupported on the record. They are now relying on separate grounds which are at best in my view shaky based on the record and at worst mischaracterizations and or fully unsupported on the record. Why don't we deal with those in seriatim? For instance, the perceived discrepancies in the dates on the health district letter, do they impugn the credibility of Mr. Shreesh or not? Well, Judge Beyer, I believe no. I think there's two issues here. First is the credibility of the letter itself and the second is Mr. Shreesh's credibility and the sub-issues are A, is the letter credible and if it's credible, is it incredible in a supportable way or in the way that the BIA said and then two, if the letter is incredible in that way, does that bear and how on Mr. Shreesh's credibility? As I concede in my brief, there's not a lot of indicia of this letter that it's the most credible. It's unclear as to why it would be in English. I think there's a good explanation that it's a translation but it's not clear why a doctor or a medical clinic or wherever the provenance of this letter is would do many of the things that are in this letter. But on the other hand, I don't think the record supports the inference that Mr. Shreesh was anything but credible. Why are you giving away all that? I mean, Mr. Shreesh had to show that he was beaten up and injured to make out his claim of political persecution. I agree. And so he somehow contacted the hospital and he was presenting his letter not in Nepal, but in the United States. So he got it written in English. So let me let me clarify my concessions. You know, I, I can. So I believe that the letter has some weight and bears some credibility. But what I'm what I'm saying is essentially that there are some, you know, there's, there's some validity to some of the statements that the BIA was making and to the extent that they refer to the IJ, was making about some of the things that are confusing about that letter. I don't think that it's anything more than bare speculation to say that the, you know, that some of the things that are confusing about that letter actually go to Mr. Shreesh's head. And, you know, I, I, I set forth that in my brief is one of the, one of the issues that comes up legally surrounding that seriatim issue of the letter is that effectively, I forgot what point I was making, but I'm puzzled as to why you're conceding anything detrimental to the use of this record. So I don't think that the, I do not think that the, so just as an evidentiary matter, I don't think that this doesn't qualify as, you know, criticize the BIA or the IJ for, you know, for credibility statements that in my view, don't have at least some possible... But you aren't criticizing them, you're appealing from their determination. The appeal requires you to criticize. Don't be so dainty. Okay. Well, I, I, I will say I'm not extremely dainty in my briefs of, in my criticism of the court below. You know, what I, what I would like to do is, you know, kind of separate the most egregious problems with the determination below from those that I think are more in any event. I don't think that, you know, regardless of whether there may be, regardless of the, you know, straight up objective reliability of that letter, and regardless of whether it is, you know, whether it is the most reliable document supporting Mr. Shreesh or the, you know, middle of the road reliability documents supporting his claim, in my view, in either case it does not bear... I think you should spend your time on the other two matters. The perceived implausibility regarding Mr. Shreesh's testimony about his Gurkha service. Okay. Now the IJ said, well, Gurkha's serving, the British always get to have British residency there. Correct. And therefore, you know, and he, and he found that the claim of Gurkha service was not credible. Yeah. Well, Judge, I think that that reflects a, a fundamental failure to, I don't know if it's a failure to so much as review the record, but certainly to heed portions of the record that directly refute that claim. And if you actually look at the way that the IJ came up with that, or what it appears from the record, the IJ came up with that determination, it appears to be a unsupported argument slash claim made by the government in cross-examination of Mr. Shreesh, which, you know, did not come with any document or anything. It was, I mean, which is permissible for cross-examination sometimes. Essentially, in the record, there is an article from the for Singaporean Gurkhas or those that serve in Singapore rather than the British Gurkha contingent in India, for example. And, you know, it goes in a relative amount of detail as to the factual differences between those two. And really the heart of the article, I think, is talking about the disparate treatment, including benefits and immigration benefits that are accorded to those two different services. Let me guide you to the last one. What's wrong with the BIA's acceptance of the IJ's demeanor findings on cross-examination? Sure. So I think that, well, the demeanor finding had several subparts, a few of which don't appear to be anything more than record-based inferences based on his testimony, which aren't really demeanor findings at all. Those that do refer to demeanor, things such as eye contact and, you know, the BIA said that, or adopted the finding, that Mr. Shreesh was more agitated and less direct. To the extent that that refers to his actual demeanor in cross-examination, I think there's very, very little weight that can be accorded based on the 98-day interim between direct examination and cross-examination, coupled with the fact that Mr. Shreesh was testifying alone in a room in a detention center through video camera with no interpreter in the room, wherein he was looking through the video camera and, you know, somewhere in his field of vision in a video camera was his interpreter, the government attorney who was asking him questions, the judge who he knew was deciding his case, his own attorney. And if his eyes were indeed darting, and he seemed a little exasperated by that, I think that can just be accorded no weight at all, and certainly no dispositive weight once the other basis for the adverse credibility finding are dropped. And so I'll reserve the rest of my time for rebuttal unless you have anything further. Excuse me, Your Honors. May it please the Court, Jeffrey L. Mencken, United States Department of Justice for the Attorney General. Your Honors, the question here, the standard of review here is not totality of the circumstances. The standard of review the Court applies is whether record evidence compels a finding that Mr. Shreesh was indeed credible. The Court has said that under the REAL-ID Act, only the most extraordinary circumstances will justify overturning an adverse credibility determination, and this is not that extraordinary case. The Board cited four reasons for finding Mr. Shreesh incredible, and as we say in our brief, we are discussing three. I think the hospital... because it seems as though the immigration judge made additional findings, but the BIA just cited those three as examples. So when you look at the immigration judge's findings, and you didn't cite this in your brief, but when you look at the immigration judge's findings, the totality of all of those findings, then it makes it more apparent why this application was denied. For example, there was the issue that Mr. Shreesh didn't bring... didn't take his family out of the village, and then he said, well, I didn't take them because I would have had to have left the mothers alone. But that's... and then there was a discussion as to whether the... well, if he was so scared about the mothers, then why did he go to Nepal and leave the mothers for seven years alone? So there were other issues that the immigration... other factors the immigration judge cited to, but then the BIA didn't cite to them. So I'm wondering, are we... do we have that authority to look at the immigration judge's findings? Well, perhaps, Your Honor, we took a too narrow view of it by focusing only on the ones that the Board mentioned. Indeed, there was that question of why he... oh, I'm sorry, didn't take his family. There was also a question that he had misrepresented his travel dates, claiming to have been places for longer periods or shorter periods than he really was after he left the country. We did confine ourselves to discussing what the Board had said, but those findings are in the record, and the Court can, indeed, whether the record as a whole requires a finding of credibility, and those just enforce... As I understood Judge Marcus' question, and perhaps you can answer it this way, if we're reviewing what the BIA did, we're reviewing the basis of BIA judgments. If the BIA didn't adopt under Bourbano or partial Bourbano the IJ's determinations, then we don't consider the IJ's determinations. Isn't that right? Your Honor, we briefed it as what the Board had specifically said. So the answer is, I think to Judge Marcus' question, we don't regard the IJ's findings. Unless the Court thinks we were mistaken in being too narrow in our approach. Well, it's not a matter of whether we think you're mistaken in being too narrow. The matter is the law is we review final orders of removal of the BIA, period. Unless under Bourbano they adopt the IJ's findings, they didn't in this case. And it doesn't change my argument, Your Honor. So they didn't adopt them in this case. No. Thank you. Regarding the hospital report, which I think standing alone is sufficient, I'll note that in their brief, Mr. Shreesh accused the immigration judge of misrepresenting that this document was written in English. And we lay out in the brief, in our brief, why that's wrong, and apparently that's no longer the position. But taking it on its face, the document, as the Board pointed out, is written in a language that it shouldn't be written in. It bears a date that it shouldn't bear, and it contains information that it shouldn't contain, because Mr. Shreesh was too afraid to tell any authorities. And yet this report tells the government-run health clinic exactly who it was who beat him up after they had threatened him not to say anything. Didn't he get this letter after he was in the United States? He said that he had contacted his wife, and it took a number of questions for him to actually answer that question. If we look in the record at 350 to 352, first he says someone got it for him. Then he finally, after a series of questions, he says that his wife got it in 2011, which raises the question of why this report isn't dated from 2011. There's no claim that it's part of a hospital record that was just pulled out of a drawer. So it's problematic in a number of ways. But I'm not following you, Mr. Menken. Help me out. Sure. Here's a man who's in deportation proceedings. He has to produce some, if he wants to win his asylum case, he wants to produce some documentary evidence which sustains the claim that he was beaten up by the Marxist, the young Communist League thugs in Nepal. All right? Yes. So he has his wife contact the hospital. It takes some time to get the document back to his wife. She says, or he says she got it in 2011 and it's dated 2010. We're supposed to think that because it's in English, when it's being sought to present to an English speaking tribunal, that that should cause us to think that there's a basis to think it's false. The question is, as proponent of the document, the burden is on Mr. Shreesh. The judge queried, why is this written in English? It's pretty obvious why, because does a judge speak Nepalese or read Nepalese? Well, Your Honor, that's not what Mr. Shreesh's position was. He originally said he didn't know why it was written in English. There was no request that it be written in English. The defense's entire argument about this was it was actually a translation, and now that's no longer the position. It's on Nepalese letterhead written in English, which Mr. Shreesh agreed would be an unusual language for official documents to be in. It's dated next to the signature March 23, 2010, which was never explained. If it's not requested to be created until 2011, why the only date on the document is March 23, 2010? He is actually in the clinic or hospital until 1 p.m. the next day, March 24. Why is it not dated then? And why does it say exactly who beat him up when he said he was too afraid to tell anybody that? It's problematic, and if it's problematic, the immigration judge's finding can't be said to be contrary to the record. Mr. Shreesh says two opposite things. Ooh, I keep doing that, I'm sorry. The IAJ can't be faulted for picking one of them. And that's what we lay out in our brief, and that's what I think carries the day. As far as Mr. Shreesh's demeanor, there's no record on that matter. There is no contemporaneous objection describing any of these explanations. Pardon me. Mr. Shreesh should object to the IJ's finding as to demeanor? At what point? Well, if Mr. Shreesh is having trouble because something is wrong with the feed, then it's incumbent upon him to say something in the record or his attorney to say something in the record. There's no claim that his attorney dropped the ball. His attorney was not in the room with him. No, but he presumably confers with his attorney in some manner during breaks or at some point. So what I'm saying is, just as speculation can't support our case, we can't speculate as to what explains his demeanor when there's nothing in the record to that. In fact, the immigration judge allowed the attorneys to rearrange themselves to give Mr. Shreesh a better view, and we have the record cite to that in our brief. So it may be an explanation, but in the absence of record evidence to back that up at all, we can't overturn a judge's observation based on, well, I think he may have had a problem with that. The only one here in this room, actually nobody here in this room, saw what the immigration judge saw. And that is why we defer to the fact finder to observe this, and he did isolate one area in particular in the record at 350 to 352, when he's being cross-examined about this problematic hospital record, which he must know on its face has issues because that's when he becomes agitated. His voice drops. His eye contact breaks off. The immigration judge identified that specific episode in the cross-examination. There's other issues as far as demeanor, as far as becoming unresponsive when being questioned about this document, again, 350 to 352, why it takes multiple questions for him to answer the simple thing of, where did you get this document? And he says, well, I went to the clinic and I did this and I did this. No, how did you get this document? When did you get this document? So there are legitimate observations, and the court rightly defers to findings of responsiveness, which is an objective finding on the record, and observation, demeanor, what the fact finder saw. When an IJ rests his adverse credibility finding on an observation of the demeanor of the petitioner, doesn't our case law require that he specifically state what aspects of that demeanor was making him suspicious? Well, I believe he did point out when this observation took place. It was during the cross-examination regarding the hospital record. He did say, while he testified in a straightforward manner on direct, admittedly in an earlier hearing, when it came to this subject matter, this topic, this document, the only document, he submitted as support that this attack ever took place. But that direct examination occurred under different circumstances, did it not? It wasn't through a video camera, he wasn't by himself. The only different circumstance, Your Honor, and I'm sorry if I cut you off, was the location of the interpreter. The interpreter had always been with Mr. Shreesh in the remote link-up. His testimony always was remote through televideo. Was his lawyer with him at the initial? No, I believe from the record the attorney always was in the courtroom with the DHS attorney and the immigration judge. So the only change is, where is the interpreter? There was no claim while he was testifying, I can't understand the interpreter. In fact, he appeared at the first five hearings without an interpreter, and he submitted pleadings in English that are, if not certainly perfect, they are intelligible. So if he couldn't understand what was being asked of him, he had opportunities to say that, and he never did. And we can speculate, well, maybe he just didn't understand the question, but that's our speculation. That's not what the court's own case law says is entitled to deference. Counsel, one quick question from way back on what you're conceding or not conceding. The BIA said that the adverse credibility determination is not clearly erroneous. That was determination? Yes. Then it said the IJ based its determination on specific codes and reasons. And then it said, for example. Now, I believe you're conceding that when it said, for example, all the other reasons are to be dismissed because it said, for example, those are the only things that we review? Or are you saying something different? No, Your Honor. You always say two different things when you're talking to two different judges. That's not my intention, Your Honor. We may have been overly narrow in our approach by only answering what the board had said. And if that was a mistake, then I take that weight. But we will stand by what we had said for these purposes and go with the board. But that doesn't change the outcome of this. The question is whether if there are multiple reasons, and there are certainly flaws. We concede that. If one isn't sustainable or even two aren't sustainable, this Court's case law is, as long as one of the reasons identified is supportable by substantial evidence, then the adverse credibility decision stands. And that is what we would submit is here. In the prior case, the counsel said that perfection is hard to achieve. Yes, perfection was not achieved here. But at the end of the day, no substantial evidence requires a finding, compels a finding, that Mr. Shreef was credible. And, therefore, the determination of the board to the extent it discussed the IJ findings should be sustained. I'd certainly be happy to answer any other questions. Well, I take it you're giving up the ground of the father working in India. Well, that specifically, as we say in our brief. Is there any basis not to give up the ground as far as the Gurkha situation? No. In fact, we're defending that. You are defending that. Oh, yes, yes. In our brief, we certainly do. He did not corroborate his Gurkha service. I don't think the letter, the article is as clear. And I would point out that at least twice in his book. But he testified he was a Gurkha in Singapore. Yes. And then he said, here's an article from the Nepal Times saying Gurkhas serve in Singapore. Well, and the immigration judge said, well, if you served in England, you would have gotten residency in England. But he didn't serve in England. So what's the basis of your defending that claim? I don't think the article is as clear as it's presented. And I have the article right here. I don't believe it makes a distinction between British Gurkha service only in the confines of the United Kingdom versus British Gurkha service in Singapore. And I would point out that twice, Mr. Shreesh, in his own brief that he wrote himself, described his service, and this is in the record at 19 and 25, as being in the Gurkha part of the British military. So it is confusing. And if it is confusing and the burden of proof is with Mr. Shreesh, then he bears the failure of proof. If it could be read the other way, yes, it might be able to be read the other way. But I think the board and the IJ had reason to be confused. And it was never made clear in the way that it's being presented as having been made clear. And for that reason, we are certainly defending that, as well as the other reasons. Thank you very much. Unless the court has any other questions, I am well into overtime. Mr. Dunn? Briefly. I guess first, one thing that I want to respond to is Mr. Mencken just referring to Mr. Shreesh's pro se brief as evidence, admissible evidence in this matter. If so, then bearing on his credibility, that same portion that he says is unclear and requires support is in a brief that included a letter from his Gurkha commander and a picture of him in the Gurkha. So if it's the government's position that that's worth relying on and a portion of the record, I would say all right. Secondly, I think Mr. Mencken, he says that the standard here is the record compels a finding of credibility. The relief that we seek, certainly that is the standard for a deemed credible remand. I think that the errors here are so great that the totality of the circumstances, regardless of whether there is an inkling of potential veracity to any single ground relied upon by the BIA, the totality of the circumstances does not ignore mischaracterizations or simple misunderstandings of the record. I think that Judge Gould puts that forth pretty clearly in Shrestha v. Holder. It seems pretty clear that the Gurkha issue, whether he served in Singapore or, I mean it's a British army and he was designated to serve in Singapore and because he's serving in Singapore, his family does not get residency or he does not get residency. Is that correct? I think that's quite clear from the article. I don't know what the lack of clarity of that Mr. Mencken. Okay, that was the article and his testimony was, I served with the Gurkhas in Singapore. Consistently, throughout, from the very first entrance interview. He has never wavered on that subject. So then we're left with the demeanor issue. Yeah, I think the demeanor issue and as far as the letter, to go back to just true rebuttal, Mr. Mencken says that there's some type of concession that we were wrong that it was a translation. To the extent there's any concession, it was simply that I don't know when it was translated. I mean my assumption is that it was translated in Nepal. Why are the demeanor findings of the IJ wrong as a matter that the evidence compels us to find that? Well, I think if you look at the BIA, which again, I'll say it again because it's important, did not cite Verbano at any extent. It says, the BIA on three of the records says, the immigration judge's adverse credibility finding was based in part on the respondent's demeanor, which the immigration judge found to be quote, less responsive, end quote, and quote, no longer precise or succinct, end quote, on cross-examination, end. There's none of this long, there's no for example there, there's no Verbano, there's no additional, you know, additional let's go in and talk about the many things on the demeanor finding. It's very, very short. Your burden is to show that the evidence compels us to find the demeanor findings. That's where I go into more detail as to what, right. I'm very sorry for cutting you off, Judge Bass. I understand the, so our burden is to establish that the record compels the finding that under the totality of the evidence, or excuse me, totality of the circumstances, there is not, there is not. Any basis for finding the demeanor. For the demeanor finding, correct. And I think there's two reasons. One in case law and one in the record that join together for establishing that hurdle for us. The, basically, the legal basis is essentially that, as you had mentioned earlier, there have to be specific quotient regions, reasons, excuse me, even behind a demeanor finding. And secondly, relatedly, they can't be simply generic. And I think here, all you have are generic and certainly nonspecific, to the extent that they're supportable, things like eyes darting, things like being more, you know, more exasperated on cross-examination. If those standing alone, based on what's readily unquestioned from the record as to the circumstances of this cross-examination, if those support, you know, standing alone, a denial of relief of a petitioner, there's really nothing left. All right. Thank you very much for your presentation. The case of Shreesh v. Lynch is submitted.
judges: Marquez, Fernandez, Bea